UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JAMES O. RICHARDSON, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:11-CV-0019HEA |
| | ) | |
| LARRY DENNEY, | ) | |
| | ) | |
| Respondent. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner James O. Richardson for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, [Doc. No. 1]. Respondent has filed a Response to the order to show cause [Doc. No. 9]. Petitioner has filed a reply [Doc. No. 14]. For the reasons set forth following the Petition will be denied.

### **Background**

On February 2, 2006, a jury in the Circuit Court of Chariton County found petitioner James O. Richardson guilty of one count of First Degree Murder.

On March 22, 2006, the trial court sentenced the petitioner to imprisonment for life without parole for the offense of first degree murder.

On October 9, 2007, the Missouri Court of Appeals, Western District of Missouri affirmed the conviction of petitioner on direct appeal. *State v.*

*Richardson*, 234 S.W.3d 626 (2007), [Doc. No. 10, Ex. J]. Thereafter, on November 5, 2007, petitioner filed his post conviction relief motion pursuant to Missouri Supreme Court Rule 29.15. On July 11, 2008 a hearing was conducted on the post conviction relief motion [Doc. No. 10, Ex. K, at 1-57]. The Rule 29.15 motion was denied by the Circuit Court of Chariton County on September 18, 2008. [Doc. No. 10, Ex. L, at 28-41]. On December 29, 2009, the Missouri Court of Appeals, Western District, affirmed the denial of the Rule 29.15 motion [*Id.*, Ex. P ].

Upon the denial of petitioners's appeal of his conviction the Missouri Court of Appeals described the facts viewed in the light most favorable to the verdict by noting:

> In March of 2004 the sheriff's office located a variety of bones including a skull in a creek in rural Chariton County. The search had been prompted by a contact from the Randolph County sheriff about a missing person report. Jared Hutchison, David Tesino, and spike Richardson (appellant's cousin) said they had last seen Naomi White in Chariton County by a concrete bridge. The remains were identified as Naomi White.
>
> The skull revealed multiple fractures around the base and the spinal column area. They indicated contact with a large, hard object and could cause death if untreated. Based upon information from Hutchison, Tesino, and Richardson, the sheriff identified appellant James Richardson as a suspect.

In August 2003 James Richardson and his girlfriend, Naomi White, stayed for three days at the trailer of Jimmy and Kim Laycock. Because Kim was angry about a sexual encounter between her husband, Jimmy, and the victim, she told James Richardson that Naomi was a "snitch". Jimmy and the defendant were drug dealers.

Around August 17, 2003, Hutchison, Spike Richardson, Tesino, and the victim spent the day and night getting high on meth. The next morning they headed to the Laycock trailer to buy more drugs. Spike separated from the group for a while during the trip and upon reuniting told Tesino that he found a list of names in the victim's purse that he had burned. The victim was upset when she discovered the list was missing.

Naomi told the group she was leaving defendant and returning to her home in Warrensburg. While White was at defendant's trailer getting her clothes Kim Laycock told Hutchison and Spike Richardson she did not want White around because she was a "snitch." Jimmy Laycock told them to take her somewhere and "not to bring her back." Hutchison, Spike Richardson, and Tesino then dropped White off at the Moberly truck stop. When defendant found out that they had left her at the truck stop, defendant began yelling and screamed that he was supposed to kill her. All of them proceeded to the truck stop and found White. After getting White in the car, they drove to an area near a bridge. Defendant and White got out and defendant told the others to come back later. After 30-45 minutes they returned to the bridge. Hutchison saw the defendant standing beside the road throwing up. Defendant said that "he'd killed the bitch." Defendant had blood on his hands and his pants were dark and red around the bottoms. Defendant told them they didn't want to know where White was, that he would take full responsibility and "snitches belong in

> ditches." Hutchison, Tesino, and Spike Richardson later burned White's clothes. Defendant told Hutchison that "he cut her throat and left her in the creek."
>
> After defendant met with Jimmy Laycock, Laycock told his wife that defendant had killed White, that he was glad she wa dead, and that defendant was leaving for Nebraska.
>
> In addition to this witness testimony, the sheriff searched an abandoned trailer in the park and found a pair of jeans with dried blood. DNA analysis found defendant"s DNA in the waistband and White's DNA was in the dried blood. Defendant testified, as did others, that he was at a party on the 18th and 19th and never left.

*State v. Richardson*, 234 S.W.3d 626 (2007), [*Id.*, Ex. J, 1-3].

## Grounds for Habeas Corpus Relief

Petitioner sets out four grounds for relief in this habeas corpus action:

(1) The evidence was insufficient because the testimony supporting the verdict was biased and inconsistent. The verdict was against the weight of the evidence.

(2) Trial counsel was ineffective for failing to introduce evidence related to petitioner's size near the time of the offense to demonstrate he could not fit into the jeans seized by the sheriff-specifically his driver's license, jail records , and testimony from his mother.

(3) Trial counsel was ineffective in failing to call Daniel Reardon as a witness to testify he saw the body of a woman in a house in some other county.

(4) Petitioner's rights were violated by the sheriff being in charge of the jury and also testifying at trial.

Respondent asserts that all of Petitioner's grounds for federal habeas relief lack merit. Respondent also argues that Ground 4 is procedurally barred as it was not pursued in the State court.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13. Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 409.

## Discussion

Ground 1. The evidence was insufficient because the testimony supporting the verdict was biased and inconsistent. The verdict was against the weight of the evidence.

Petitioner raised this very same point in his appeal and in essence asserts the same arguments in this federal Habeas action as he did in his direct appeal. The review authority of this court is strictly limited. Under 28 U.S.C. Section 2254(d), this Court must defer to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of

facts. The crux of petitioner's argument is the doctrine of destructive contradiction. The United States Supreme Court has never held that this doctrine is part of due process. At best, the doctrine is one of the state court's to determine what evidence is substantial. The question for this Court is not whether a state court may have constitutionally erred in the application of state court law but whether it unreasonably applied federal law as determined by the Supreme Court of the United States.

In *Jackson v. Virginia*, 443 U. S. 307, 99 S. Ct. 2781 (1978), the Court plainly noted the standard for sufficiency of the evidence and that the due process clause required that evidence be sufficient to support guilt, that is, taking the evidence in the light most favorable to the State, could a reasonable trier of fact determine the defendant was guilty 443 U. S. at 318-20. In the assertion of conflicting evidence the reviewing court must assume the trier of fact resolved those issues in favor of the prosecution. *McDaniel v. Brown*, 130 S. Ct. 665, 673 (2009). Here there was some contradiction in the testimony of witnesses, however the DNA of the defendant was discovered on a pair of jeans seized by the sheriff along with blood containing the DNA of the victim. In addition, the defendant admitted the killing of the victim to a number of people. For all of the above reasons this ground is denied.

Ground 2. Trial counsel was ineffective for failing to introduce evidence related to petitioner's size near the time of the offense to demonstrate he could not fit into the jeans seized b the sheriff-specifically his driver's license, jail records ,and testimony from his mother.

Ground 3. Trial counsel was ineffective in failing to call Daniel Reardon as a witness to testify he saw the body of a woman in a house in some other county.

In Grounds 2 and 3, petitioner alleges that he received constitutionally ineffective assistance of counsel. In *Strickland v. Washington*, 466 U. S. 668, 686 (1984) the Supreme Court held that federal habeas corpus relief is available when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." In *Strickland*, the inquiry focuses around whether counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's   but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, at 694.

Both parts of the *Strickland* test must be met in order for an ineffective assistance of counsel claim to succeed. *Anderson v. United States,* 393 F.3d 749, 753 (8th Cir.), *cert. denied,* 546 U.S. 882 (2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Review of

counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* The court does not "second-guess" trial strategy or rely on the benefit of hindsight, *id.,* and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, *United States v. Ledezma-Rodriguez,* 423 F.3d 830, 836 (2005). If the underlying claim would have been rejected, counsel's performance is not deficient. *Carter v. Hopkins,* 92 F.3d 666, 671 (8th Cir.1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.*

The second part of the *Strickland* test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Anderson,* 393 F.3d at 753-54 (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." *Id.* at 695; *Williams v. U.S.,* 452 F.3d 1009, 1012-13 (8th Cir. 2006).

A review of the exhibits filed with this Court including testimony from the Rule 29.15 hearing and the Appellate record, this Court is again mindful that it must defer to the decision of the state court unless that decision was contrary to or involved an unreasonable application of the federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts.

Here, the Missouri Court utilized the *Strickland* standard and test. In reviewing the trial testimony in relation to the assertion of the uncalled testimony, there is no basis for this Court to determine if there was an unreasonable application of federal law or unreasonable determination of the facts. There was testimony from an expert that Defendant's DNA was on the jeans and the victim's DNA was in the blood spots on the jeans. There was testimony regarding the defendant's size in 2003. In light of these specific facts, and the totality of all the evidence presented at the trial and on the hearing of the 29.15 motion, and its subsequent review, Ground 2 is denied. The decisions of the Missouri courts were reasonable factually and legally.

As to Ground 3, the testimony of Reardon, as noted in his appearance at the Rule 29.15 hearing, would have been that he was shown a body of a female at a house in August 2003. [Doc. No. 10, Ex K, page 20]. In his testimony and through cross-examination, Reardon admitted he had multiple convictions for burglary

[*Id*., 19, 22-23]. He stated he talked to petitioner's trial cousel before trial and was brought to Chariton County as a possible witness. [*Id*., 23-24]. Reardon also stated that he refused to testify at that time. [Id., 24-25]. Again the Missouri courts applied the *Strickland* test and standard. There was no reason presented by petitioner as to why trial counsel decided to not call Reardon. However, there are two obvious reasons why Reardon would not be called. He refused to testify at the time, and he had a prior record which would have been used to impeach his testimony. The decision of the state court should be sustained if there are potential reasonable grounds for opting to not call a witness. *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). As the decision of the Missouri courts were reasonable factually and as a matter of law, Ground 3 is denied.

Ground 4. Petitioner's rights were violated by the sheriff being in charge of the jury and also testifying at trial.

It is here noted that his claim was not part of his direct appeal. [Doc. No. 10, Ex. G]. The amended motion included the claim of counsel as ineffective for not raising the issue at trial. [*Id*., Ex. L, 13, 21-23]. The claim was not, however, included in the appeal of the denial of the Rule 29.15 motion. [*Id*., Ex. M].

Richardson, in an attempt to re-open post conviction matters, claimed post conviction counsel ineffective in the representation on this issue. [*Id*., Ex. Q].

Pursuant to 28 U. S. C. §2254 (b) a petitioner must exhaust state remedies before presenting a claim for review. In order to exhaust the petitioner must have presented the "substance" of the claim to the state courts. *Anderson v. Harless*, 459 U. S. 4, 6, 103 S. Ct. 276, 277 (1982). A claim is not fairly presented when factual allegations with a significant impact on the merits are raised for the first time in federal court. *Stranghoener v. Black*, 720 F.2d. 1005, 1007-09 (8th Cir. 1983). That is to say the factual basis and legal basis for the claim must have been raised with the state courts. *King v. Kemma*, 266 F. 3d 816, 821 (8th Cir. banc 1001).

A federal habeas petitioner has procedurally defaulted on a claim when he has not properly exhausted state remedies on a claim and the time for doing so has expired. *Welch v. Lund* 616 F. 3d 756, 758 (8th Cir. 2010). Habeas review is only available if petitioner has "cause and prejudice" excusing the procedural default. *Id*. at 760.

Richardson initially included the claim in his amended motion, however, motion counsel opted to not present evidence on the issue, and it was not raised on appeal from the denial of the amended motion. [Doc. No. 10, Ex. K, 5, Ex. L, 13, 21-23, Ex. M]. This failure to do so is an independent state procedural bar to the revival of the claim at a later time. Even though he tried to re-open the state

proceeding this failed as this was the abandonment of an individual claim rather than the abandonment of the whole claim. The claim was not, therefore, properly presented to the motion court nor the appellate court. Respondent properly asserts and the Court agrees that this ground should be denied as procedurally barred.

The Court has reviewed the trial record, the Missouri court rulings, opinions and decisions. It has further reviewed all pleadings, motions and memoranda before it. The Court, concluding its review under AEDPA, denies the petition for habeas corpus relief.

## Certificate of Appealablity

The federal statute governing certificates of appealability provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right requires that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). This Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right. A Certificate of Appealability will therefore not be issued.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Petitioner has not made a substantial showing of the denial of a federal constitutional right.

A separate judgment is entered this same date.

Dated this 27th day of January, 2014.

_____
  HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE